UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **JANET SAPIA ET AL** | **CASE NO. 6:22-CV-01725** |
| **VERSUS** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |
| **WALMART INC** | |

## MEMORANDUM ORDER

Before the Court is Defendant Walmart, Inc.'s ("Walmart") Motion for Summary Judgment. (Rec. Doc. 14). Plaintiffs oppose the Motion (Rec. Doc. 19), and Walmart replied. (Rec. Doc. 24). Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, the Motion is GRANTED.

## Facts and Procedural History

On May 16, 2022, Plaintiffs filed a Petition for Damages against Walmart in the 27th Judicial District Court, St. Landry Parish, State of Louisiana, after Plaintiff Janet Sapia slipped on a liquid substance and fell at a Walmart in Opelousas, Louisiana. (Rec. Doc. 1-2). On June 20, 2022, the case was properly removed to this Court on the basis of diversity. (Rec. Doc. 1).

Pertinent to the present motion, on June 13, 2021, at approximately 8:08:19 a.m., Ms. Sapia was walking through the Health and Beauty Aids ("HBA") department accompanied by her husband, Mr. Sapia, when she slipped on a liquid

substance believed to be some type of clear, gel product. (Rec. Docs. 14-4 & 14-7). Tonia Williams, GM coach for Walmart, authenticated the surveillance video from the incident. (Rec. Doc. 14-15). The video and screenshots show an unidentified female customer reaching for products in the HBA department starting at 8:01:37 a.m. (Rec. Docs. 14-5 & 14-6). From 8:03 a.m. to 8:06 a.m. and at 8:07:10 a.m., the unidentified customer removes containers of shampoo/body wash from the shelf, takes off the tops, smells the contents, and then places the containers back on the shelf. (*Id.*). The last time the customer did this was at 8:07:22 a.m. (*Id.*). The video does not show the customer drop or spill anything. Just eleven seconds later, Plaintiffs enter the HBA aisle at 8:07:33 a.m. (*Id.*). Shortly thereafter, Ms. Sapia picks up an item for her husband and begins walking towards the area where the unidentified customer was standing. (*Id.*). Ms. Sapia takes two steps and slips and falls at 8:08:19 a.m. in the area where the unidentified customer had been one minute prior. (*Id.*).

On January 25, 2024, Walmart filed the pending Motion for Summary Judgment requesting that Plaintiffs' claims against it be dismissed because: (1) Plaintiffs cannot establish that Walmart created the hazard; (2) Plaintiffs cannot establish that Walmart had actual or constructive notice of the condition prior to Ms. Sapia's fall; and (3) Plaintiffs cannot establish the length of time that the substance was present on the floor before the alleged fall. (Rec. Doc. 14-3).

On February 26, 2024, Plaintiffs filed their opposition. (Rec. Doc. 19). Plaintiffs contend there are genuine issues of material fact as to whether: (1) Walmart created the hazardous condition in the aisle where Ms. Sapia fell; (2) Walmart had actual or constructive knowledge of the alleged hazard; and (3) the length of time the liquid existed in the aisle. (*Id.*).

## Law and Analysis

### A. Standard of Review

Summary judgment shall [be] grant[ed] … if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(A). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in this case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the

evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

### B. Louisiana Merchant Liability Act La. R.S. 9:2800.6

"In diversity cases, a federal court must apply federal procedural rules and the substantive law of the forum state…" *Hyde v. Hoffmann-La Roche, Inc.*, 511 F.3d 506, 510 (5th Cir. 2007). Thus, Louisiana substantive law applies in this case. Plaintiffs' claims fall under the Louisiana Merchant Liability Act, which states:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
>
> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
>
>> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>>
>> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>>
>> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety

> procedure is insufficient, alone, to prove failure to exercise reasonable care.
>
> C. Definitions:
>
> > (1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

La. R.S. 9:2800.6.

In summary, La. R.S. 9:2800.6 provides that the plaintiff has the burden of proving, in addition to all other elements of the cause of action, that the merchant either (1) created the condition that caused the occurrence or (2) had actual or constructive notice of the condition prior to the occurrence and failed to exercise reasonable care.

### 1. Did Walmart Create the Hazard?

Plaintiffs contend that Walmart created the hazardous condition in the aisle where Ms. Sapia fell. (Rec. Doc. 19). Plaintiffs state that they need only prove that Walmart was responsible for maintaining the area where the hazardous condition existed. (*Id.*). Plaintiffs assert that the evidence shows that no Walmart employee entered the contaminated aisle in the hour before the incident despite knowing that

customers often open, smell, and return products to the shelf. (*Id*. at p. 18). Plaintiffs note that in a one-hour period, eight customers, in addition to the unidentified customer, entered the aisle prior to Ms. Sapia. (*Id*.). According to Plaintiffs, Walmart's failure to monitor and maintain the area with a safety sweep during that hour could be considered creating the hazard. (*Id*.). Plaintiffs rely on *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742 (5th Cir. 2017) to support their contention that "evidence of maintenance of its own floors is enough to conclude that a merchant created the hazardous condition through its failure of maintenance." (*Id*. at p. 12). To further support this contention, Plaintiffs assert that their expert, Phillip Beard, P.E. ("Beard") rendered an opinion that the non-slip resistant flooring in an area where there are oily substances for sale constitutes an unreasonably dangerous hazard that Walmart is responsible and liable for. (Rec. Doc. 14-13). Specifically, Beard states that Walmart chose to use cheaper, non-slip resistant tiles in an area where spills are foreseeable[1]. *Id*. Plaintiffs thus conclude that there is sufficient evidence to show that Walmart's actions (or inactions) created the hazard which led to Ms. Sapia's fall. (Rec. Doc. 19).

Walmart responds that Plaintiffs' entire opposition is premised on unsupported speculation and relies on inapposite caselaw. (Rec. Doc. 24). Walmart

---

[1] The Court notes that Walmart objects to Beard's affidavit and testimony and has filed a Motion in Limine to Strike Plaintiffs' Expert. (Rec. Doc. 18). The Court's disposition of the present motion renders moot Walmart's objection/Motion; nevertheless, the Court finds that Beard's opinions do not negate Walmart's entitlement to summary judgement.

asserts that Plaintiffs have no competent evidence to suggest that Walmart created the hazardous condition because there is no evidence to show how the substance got on the floor or how long it had been there. (Rec. Docs. 19 & 24). Walmart asserts that this case is not the same as *Deshotel*. This Court agrees. In *Deshotel*, there was no question that the roof of a Walmart store had leaked, and no question that Walmart knew the roof had issues with leaking in the past. The question concerned whether the leak caused a patron's slip and fall (Walmart argued that the plaintiffs could not prove that the subject liquid came from the leaky roof). The *Deshotel* court explained that although there were differing opinions on the precise location of the leaks, a genuine issue of material fact existed on whether Walmart created the hazard because the testimony of Walmart's manager "provide[d] support for a generally leaky roof" secondary to inadequate maintenance. *Deshotel*, 850 F.3d at 746. Therefore, sufficient factual evidence existed to support the opinions of the plaintiff's expert concerning poor maintenance and causation of the fall. *Id.* at 746-47.

Walmart asserts that this case is a far cry from *Deshotel* and is more like *Harris v. Dollar Tree Stores, Inc.*, CV 18-1823, 2020 WL 6868848 (E.D. La. Nov. 23, 2020) wherein the plaintiff also argued that the defendant could be liable for creating a hazardous condition if the defendant is responsible for maintaining the area where the condition was located. In rejecting this argument, the court held:

> Plaintiff's argument misconstrues *Deshotel*. Even if Dollar Tree is responsible for maintaining its own floors, plaintiff still must point to evidence, absent speculation, suggesting that the *defendant* created the hazardous condition. Another Fifth Circuit decision, *Bearb v. Wal-Mart*, is instructive. Like the plaintiff in *Deshotel*, the plaintiff in *Bearb* alleged she was injured from slipping on a wet floor at Wal-Mart. But in *Bearb*, "the only evidence that a leaky skylight created a puddle on the floor was 'speculation and [the plaintiffs'] own unsubstantiated statements.'" The plaintiff in *Bearb* contended that the wet floor could have been either the result of a leaking skylight or wet shopping carts. Plaintiff's speculation, the Fifth Circuit found, precluded her from creating a genuine dispute of material fact on the issue of whether the defendant created the hazardous condition.

*Harris v. Dollar Tree Stores, Inc.*, No. CV 18-1823, 2020 WL 6868848, at *3 (E.D. La. Nov. 23, 2020)(internal citations omitted).

> Analogous to the present case, the *Harris* court found that the plaintiff pointed
>
> …to no evidence suggesting that Dollar Tree created a hazardous condition. The surveillance video does not show any wet substance on the floor, and plaintiff does not contend that it does. Moreover, plaintiff testified that she did not know how the substance came to be on the floor. As a result, plaintiff's argument that Dollar Tree created the hazardous condition is mere speculation, unsupported by any evidence in the record.

*Id*. (citing Ross *v. Schwegmann Giant Super Markets, Inc.*, 734 So.2d 910, 913 (La. App. 1 Cir. 1999)(internal citations omitted).

Here, Plaintiffs, as well as their expert, concede that they do not know how the liquid got on the floor or how long it had been present. (Rec. Docs. 14-4, pp. 49 & 55-57; 14-7, pp. 9-10; & 19-1). The Court therefore concludes that Plaintiffs have

not established a genuine issue of fact that Walmart created the alleged hazardous condition.

### 2. Did Walmart Have Actual or Constructive Knowledge?

Plaintiffs rely on *Flowers v. Wal-Mart Inc.*, 79 F.4th 449 (5th Cir. 2023) to support their contention that whether the period of time that a condition was sufficient to provide a merchant with constructive notice is a fact question that must be submitted to the jury. Again, *Flowers* is distinguishable from the present case. In *Flowers*, the Fifth Circuit found that the plaintiff provided direct evidence that the puddle existed for "some period of time." *Id*. at 453. Specifically, the plaintiff presented a witness who noticed the puddle of water and notified a Walmart employee of its existence prior to the plaintiff's fall. *Id*. The plaintiff in *Flowers* was also able to present direct evidence that the puddle of water was present for at least four minutes via the surveillance video, as well as circumstantial evidence that it had been present even longer (evidence that it was raining outside, the puddle was in a high traffic area, etc.). *Id*. The court determined that the plaintiff presented enough evidence to create a genuine issue of material fact that the period of time the puddle existed was sufficient to place Walmart on notice of its existence. *Id*. at 455. Here, as detailed below, Plaintiffs offer no such evidence but would rather have the Court "draw a series of impermissible inferences unsupported by [the] summary

judgment record." *Taylor v. Wal-Mart Stores, Inc.,* No. CIV.A. 10-1503, 2011 WL 3439928, at *4 (E.D. La. Aug. 8, 2011), aff'd, 464 F. App'x 337 (5th Cir. 2012).

### a.     The Temporal Element

The seminal case interpreting the Louisiana Merchant Liability Act is *White v. Wal-Mart Stores, Inc.,* 699 So.2d 1081 (La.1997). In *White,* the court held:

> [I]t is the plaintiff's burden to prove each element of her cause of action under La. R.S. 9:2800.6(b). Furthermore, because constructive notice is plainly defined to include a mandatory temporal element, we find that where a claimant is relying upon constructive notice under La. R.S.9:2800.6(b)(2), the claimant must come forward with positive evidence showing that the damage-causing condition existed for some period of time, and that such time was sufficient to place the merchant defendant on notice of its existence.

A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute. "Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall." *Kennedy v. Wal-Mart Stores, Inc.*, 733 So. 2d 1188, 1191 (La.1999).

Plaintiffs assert they can prove by circumstantial evidence that the liquid in the aisle *could* have existed for some period of time prior to Ms. Sapia's fall. According to Plaintiffs, the following set of facts, as seen on the video surveillance, shows that there exists circumstantial evidence that the liquid could have been

present in the aisle for some time before Ms. Sapia's fall: (1) eight patrons and the unidentified customer entered the aisle and perused the shelves in the hour before the incident, but none, except the unidentified customer, walked the direct path taken by Ms. Sapia where she fell; (2) no spillage or dropping of any liquids visibly occurred in that hour; (3) Ms. Sapia slipped and fell in the aisle; (4) Walmart associates placed an orange caution triangle in the area of the fall approximately 20 minutes later; and (5) a Walmart associate cleaned a large circumference in the spill area with paper towels. (Rec. Doc. 19). Plaintiffs conclude that, altogether, at a minimum, these facts show a genuine dispute in material fact as to how long the liquid existed in the aisle, or as to when Walmart should have noticed the liquid. *Id.*

The Court finds *Taylor v. Wal-Mart Stores, Inc.*, akin to the present case. *Taylor v. Wal-Mart Stores, Inc.*, No. CIV.A. 10-1503, 2011 WL 3439928 (E.D. La. Aug. 8, 2011), aff'd, 464 F. App'x 337 (5th Cir. 2012). In *Taylor*, the plaintiff alleged that the surveillance video established a genuine issue of material fact. *Id.* Almost identical to the present case, in *Taylor*, the surveillance video captured an hour of footage leading up to the plaintiff's fall showing other customers traversing the area. *Id.* The video did not show anyone, neither Walmart employee nor shopper, look to the area where the wet substance was alleged to be present, and no other people slipped in the general area. *Id.* No wet substance was visible at any time in the video. *Id.* Like Plaintiffs here, the plaintiff emphasized that at no time did anyone come to

inspect the area for possible spills. *Id*. The Fifth Circuit affirmed a district court's grant of summary judgment, noting that "[t]he video merely shows the passage of time and lacks any visual evidence of a wet substance on the floor." *Taylor*, 464 F. App'x 337 at 339. The Fifth Circuit reiterated that the plaintiff failed to meet her burden to show constructive notice because "[t]he video does not show someone or something creating the wet substance; it does not show others slipping or avoiding the area; it shows no one making a failed attempt to clean or secure the area." *Id*. The court reasoned that, to assume the substance preexisted the video footage, would ask the court "to draw a series of impermissible inferences unsupported by [the] summary judgment record." *Id*.

This Court finds that, although a wet floor may present an unreasonable risk of harm, Plaintiffs have failed to show that Walmart knew or had constructive knowledge of the wet substance on the floor or that Walmart failed to exercise reasonable care. Both Plaintiffs admitted that they did not know how long the substance was on the floor, and they have produced no third-party witness or competent evidence, circumstantial or otherwise, that would suggest how long it had been there.

Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir.2002);

*SEC v. Recile,* 10 F.3d 1093, 1097 (5th Cir.1997); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *see also Pyron v. Piccadilly Restaurants, LLC*, No. 4:09-00057, 2010 WL 2683618 at *3 (N.D. Miss. 7/2/10) ("In the present case, the plaintiff has offered nothing beyond speculation that the floor was mopped with a 'greasy mop' to show why the floor was slick. Such speculation is insufficient to defeat the defendant's motion for summary judgment.")

The Court finds that Plaintiffs have failed to establish a genuine issue of material fact for trial as to causation, actual notice, or constructive notice. Accordingly, Walmart is entitled to judgment as a matter of law dismissing Plaintiffs' claims.

### C. Spoliation of Evidence

Plaintiffs raise a spoliation of evidence argument noting that Plaintiffs "may very well be entitled to an adverse presumption due to Walmart's failure to preserve [certain] evidence." (Rec. Doc. 19, p. 28). Plaintiffs, however, make no specific request regarding this argument; nevertheless, the Court will address it. Plaintiffs allege that a bottle missing its top was found following the incident and Walmart failed to preserve it. (*Id*. at pp. 27-28). Additionally, according to Plaintiffs, Walmart only produced surveillance video from an hour before and after the incident, none of which shows a potential spill. (*Id.*).

The Fifth Circuit permits an adverse inference against the spoliator or sanctions against the spoliator only upon a showing of bad faith or bad conduct. *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 F. App'x 565, 572 (5th Cir. 2020). As detailed by the Fifth Circuit:

> When evaluating allegations regarding spoliation of evidence, federal courts sitting in diversity are to apply federal evidentiary rules rather than state spoliation laws. A plaintiff alleging spoliation must establish that the defendant *intentionally* destroyed the evidence for the purpose of depriving opposing parties of its use. It is insufficient to show that a party acted negligently, rather than intentionally, in spoliating the evidence.

*Id.* at 573-74 (internal citations omitted).

Plaintiff failed to provide any evidence that Walmart intentionally destroyed the evidence for the purpose of depriving Plaintiffs its use. Accordingly, Plaintiffs spoliation of evidence argument has no merit.

## **Conclusion**

For the reasons discussed herein, the Motion is GRANTED.

THUS DONE in Chambers, Lafayette, Louisiana on this 28th day of June, 2024.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE